# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE, )
)
v. ) Cr. ID. No. 1909016936
)
RONNIE C. WILLIAMS, )
)
Defendant. )

Submitted: January 12, 2026
Decided: April 22, 2026

## COMMISSIONER'S REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF and POSTCONVICTION COUNSEL'S MOTION TO WITHDRAW

Diana Dunn, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware, Attorney for the State.

Eugene Maurer, Esquire, trial counsel.

Christofer Johnson, Esquire, appellate counsel.

Patrick J. Collins, Esquire, postconviction counsel.

Ronnie C. Williams, James T. Vaughn Correctional Center, Smyrna, Delaware.

**O'CONNOR,** Commissioner.

This 22nd day of April, 2026, upon consideration of Defendant Ronnie Williams' ("Defendant") Motion for Postconviction Relief;[1] Defendant's Memorandum of Law in Support of Rule 61 Motion for Postconviction Relief;[2] the Affidavit[3] and Amended Affidavit[4] of Trial Counsel; the Affidavit[5] and Amended Affidavit[6] of Appellate Counsel; the State's Response to the Motion for Postconviction Relief;[7] Defendant's Response to Affidavits of Trial and Appellate Counsel;[8] Defendant's Reply to the State's Response to the Motion for Postconviction Relief;[9] postconviction counsel's Motion to Withdraw;[10] and the record in this matter, the following is my Report and Recommendation.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Defendant Ronnie C. Williams was arrested on September 27, 2019 by officers of the New Castle County Police Department ("NCCPD") and charged with several offenses, including Sexual Abuse of a Child by a Person in a Position of Trust First Degree; Rape Second Degree; Continuous Sexual Abuse of a Child; Sexual Abuse of a Child by a Person in a Position of Trust, Authority or Supervision

---

[1]  Docket Item ("D.I.") 58.
[2]  D.I. 83.
[3]  D.I. 93.
[4]  D.I. 94.
[5]  D.I. 88.
[6]  D.I. 92.
[7]  D.I. 95.
[8]  D.I. 97.
[9]  D.I. 99.
[10]  D.I. 75.

in the Second Degree; Unlawful Sexual Contact Second Degree; and Unlawful Sexual Contact with a Person who is less than 13 years of Age.[11]  It was alleged that over the course of several years, Defendant sexually assaulted three minors.  On January 21, 2020, a New Castle County Grand Jury indicted Defendant,[12] and on October 25, 2021, the State obtained a superseding indictment.[13]

At the conclusion of a five-day jury trial, Defendant was found guilty of:  Rape Second Degree (Criminal Action # IN21-10-1360 (as  to victim E.H.)), Continuous Sexual Abuse of a Child (Criminal Action # IN21-10-1365 (as to victim E.H.)), Unlawful Sexual Contact First Degree (Criminal Action # IN21-10-1367 (as to victim A.G.)), Sexual Abuse of a Child by a Person in a Position of Trust, Authority or Supervision in the Second Degree (Criminal Action # IN21-10-1372 (as to victim A.G.), and Sexual Solicitation of a Child (Criminal Action # IN21-10-1374 (as to victim A.G.).[14]  The jury acquitted Defendant of the indicted offenses regarding the third victim – A.D.

---

[11]  *State v. Williams*, Case No. 1909016936, Adult Complaint and Warrant.
[12]  D.I. 4.
[13]   D.I. 23. The following differences exist between the indictment and superseding indictment: the State modified the victim's initials in Counts I – VII, from E.E. to E.H.; in Counts VIII – XII, the charges are unchanged; in counts XIII and XIV, the date range for the offenses was modified from March 14, 2011 to March 13, 2017, to March 14, 2011 to June 15, 2017; the State added one count of Sexual Solicitation of a Child to the superseding indictment (Count XV);  and Counts XVI thru Count XX of the superseding indictment are identical to Counts XV thru XIX of the original indictment.
[14]  D.I. 33.

On February 18, 2022, this Court imposed an aggregate sentence of seventy-one years at Level V, suspended after serving twenty-two years, followed by probation.[15] Defendant appealed the convictions to the Delaware Supreme Court ("Supreme Court").[16]

On appeal, the Supreme Court found the following record facts:

The defendant, Ronnie C. Williams, met two brothers, E.H. and A.G., in 2008 when E.H. was 12 years-old and A.G. was 7 or 8 years-old. He was introduced to the brothers by Cyree, a 14-year-old boy who was living with Williams. Williams had been roommates with Cyree's mother and had agreed to look after her son while she spent time in prison and, later, in North Carolina.

Williams and Cyree had recently moved into the New Castle neighborhood where E.H. and A.G. lived and, according to Williams, he and Cyree "went to their house to meet them because we were new to the neighborhood." E.H. and A.G. appeared to enjoy spending time with Williams and Cyree at Williams's home. A.G. testified that "it was a fun environment, there was game systems such as Xbox, Play Station, and I liked hanging out with Cyree and just go over there, talk about life with Ronnie."

Williams took on a "parental" role in A.G.'s life while A.G.'s father was in prison, and he eventually became A.G.'s legal guardian, making A.G.'s doctor appointments, paying for food and clothing, giving him access to a car, and bringing him to Chicago Bulls games. Eventual disclosures revealed, however, that this veneer of generosity concealed a disturbing pattern of sexual abuse.

The allegations of abuse were first disclosed following a 2018 fight between Williams and A.G. After the altercation, the two went to A.G.'s mother's home in Wilmington, where A.G. told his mother that Williams had hit him. When A.G.'s mother chastised A.G., who at this

---

[15] D.I. 37.
[16] D.I. 38.

point was 17 years old, about his behavior toward Williams and at her house, A.G. "[stood] up and [said], 'Well, Ronnie has been abusing me. When I was 10 years old, he touched my butt, and he has been making me masturbate in front of him.'"

Later that day, a New Castle County police officer responded to a call for assistance at A.G.'s mother's residence. A.G. told the officer about the fight with Williams earlier in the day. A.G. also told the officer that Williams had engaged in "unwanted sexual things" with him, dating back to when A.G. was 10 years old. As a result, Williams was arrested and charged with unspecified offenses for his role in the altercation with A.G., and the New Castle County Police Department opened an investigation into A.G.'s sexual abuse allegations. During that investigation, A.G.'s older brother, E.H. also disclosed that Williams had sexually abused him when E.H. was still a minor.

The investigation culminated in Williams's arrest at his home on September 27, 2019. When officers arrived, they found Williams's then 13-year-old nephew, A.D., playing videogames. A.D. told the officers that Williams had, on several occasions, touched him in inappropriate ways while he was sleeping over at the house.

Williams eventually faced trial on a 15-count indictment that charged him with various sexual offenses against the three juveniles, including rape in the second degree and continuous sexual abuse of a child.

At trial, E.H. testified that Williams would force him into unwanted sexual acts when he would spend the night at Williams's home with Cyree. A.G. also testified that Williams first molested him during a sleepover at Williams's home and that the abuse escalated after Williams caught him watching pornography on the PlayStation.[17]

On direct appeal, Defendant's counsel raised two claims. In the first, he argued that this Court erred in not declaring a mistrial "after [Kathy] Cordova called him a liar and several of the State's witnesses alluded to the fact that Cyree was

---

[17] *Williams v. State*, 296 A.3d 895, 897-99 (Del. 2023).

4

living with [the defendant]."[18]   The Supreme Court summarized the pertinent testimony of Ms. Cordova as follows:

> Although able to speak and understand English, E.H.'s and A.G.'s mother—Katty Cordova—elected to testify during trial with the help of a Spanish interpreter. While on direct examination by the State, Ms. Cordova, using English, yelled over the interpreter that Williams was "a freaking liar." She then repeated the word "liar," as the court interjected "no outbursts ... [j]ust answer the question." Defense counsel immediately asked the judge to excuse the jury to allow Cordova a moment to calm down. The court declined defense counsel's request, but Cordova again stated that Williams was "such a liar." Defense counsel then requested, and the court called, a sidebar.
>
> During the sidebar, defense counsel moved for a mistrial on the grounds that Cordova's outburst was "prejudicial to [Williams], which w[ould] reflect on his credibility when he [ ] testif[ied]." The trial judge, after discussing the matter with counsel, elected to break for the weekend but not before instructing the jury to "disregard the last comment that was given." After the jury left the courtroom, the court informed Cordova that "[t]his is a courtroom. We have a certain level of decorum in a courtroom. We don't have outbursts, we don't have people yelling at other people, and we don't have people pointing fingers and calling them names." When Cordova's testimony resumed following the weekend recess, there were no further outbursts.

In appellate counsel's second claim, he argued this Court's "failure to declare a mistrial after prosecution witnesses gave unfairly prejudicial testimony compromised his Sixth Amendment right to trial before an impartial jury."[19]

In affirming Defendant's convictions, the Supreme Court first concluded that Ms. Cordova's outburst(s) did not warrant a mistrial.  While acknowledging that a

---

18   *Id.* at 902.
19   *Id.*

5

mistrial was "one way to remedy instances where a jury has been subjected to improperly admitted and unfairly prejudicial evidence,"[20] Defendant's claim that a mistrial was the only remedy to cure any possible prejudice from Ms. Cordova's outburst(s) was rejected.

Defendant's second argument fared no better. At some point before trial, this Court held that the State was not permitted to elicit evidence that Cyree Watson lived with Defendant, or that Defendant was Cyree's guardian."[21] This limitation proved challenging for the State, as the victims E.H. and A.G. met Cyree as neighbors and were introduced to Defendant through Cyree. As trial progressed, the State presented testimony of Cyree's living with Defendant through three witnesses: Latonya Smith, E.H., and Ms. Cordova. Despite all three witnesses being instructed by the State not to mention Cyree's living with Defendant prior to testifying, the State's witnesses were unable to comply with this Court's ruling. In denying Defendant's second claim, the Supreme Court held:

> Several facts compel our conclusion that the trial court was well within its discretion when it denied Williams's motions for a mistrial on these grounds. First, the court offered to give, and Williams repeatedly declined, curative instructions throughout the trial. Williams, moreover, did not request that a curative instruction be included in the final jury instructions, presumably to avoid reminding the jury that another boy lived with Williams during the period in which he allegedly abused E.H. and A.G. Given Williams's strategic decision to forgo

---

[20] *Id.*
[21] *Id.* at 899.

6

curative instructions when offered during trial and before jury deliberations, his criticism of the court on this point rings hollow.

Secondly, it would have been nearly impossible for E.H. and A.G. to explain how they had come to meet and spend time with Williams without indicating that Cyree lived with Williams; indeed, Cyree's presence in Williams's home was inextricable from their presence. And the fact that E.H. and A.G. slept over at Williams' house was going to come out at trial regardless of whether the jury was alerted to the fact that Cyree was living there. In fact, E.H.'s and A.G.'s sleepovers at Williams's appear less suspicious, not more so, when one considers that they were invited to the house by a boy their own age rather than by a grown man who lived alone. This is particularly true in the absence of any evidence indicating that Williams had an inappropriate relationship with Cyree. We simply do not see—and Williams has not explained— how these references to Cyree ran afoul of the rules of evidence or caused any prejudice to Williams.

And finally, as we have mentioned, there is evidence suggesting that the jury here was not, in fact, prejudiced by the repeated mentions of Cyree: Williams was acquitted on all charges that he had molested A.D. despite the jury convicting Williams of similar charges against E.H. and A.G. This fact indicates that the jury was able to independently assess each boy's allegations rather than assuming that Williams was abusive towards every boy of that age who spent time in his home.[22]

On May 11, 2023, the Supreme Court issued its mandate, affirming Defendant's convictions.[23]

---

[22] *Id.* at 904-05.

[23] D.I. 54. On November 16, 2023, Defendant filed a civil right action in the United States District Court for the District of Delaware pursuant to 42 U.S.C. § 1983, alleging that the police investigation and prosecution conducted by Detectives Joshuah Smith and Keith Sydnor of the New Castle County Police Department and Deputy Attorney Generals Diana Dunn and Kelly Sheridan of the Delaware Department of Justice, constituted a violation of his civil rights as well as tort claims under Delaware law. *See Williams v. Dunn*, C.A. No. 23-1311 (MN). Defendant argued that the investigation and prosecution which resulted in his convictions violated the U.S. Constitution and the Delaware Constitution. *Williams v. Dunn*, 2025 WL 1784589, at *1 (D. Del. June 27, 2025). For the reasons stated in the District Court's Memorandum Order, Defendants'

On April 5, 2024, Defendant filed a Motion for Appointment of Postconviction Counsel[24] and a Motion for Postconviction Relief.[25] On April 16, 2024, this Court granted the Motion for Appointment of Postconviction Counsel, and on September 4, 2024, Patrick Collins, Esquire was confirmed as Defendant's postconviction counsel.[26] On March 24, 2025, Mr. Collins filed a Motion to Withdraw as Counsel,[27] along with a Memorandum in Support of the Motion to Withdraw.[28] On May 17, 2025, Defendant filed a Response to the Motion to Withdraw,[29] and on May 27, 2025, Defendant filed a Memorandum of Law In Support of Rule 61 Motion for Postconviction Relief.[30]

On October 3, 2025, this court received appellate counsel's affidavit, in which he denied Defendant's ineffective assistance of counsel claims.[31] And, on November 7, 2025, trial counsel submitted an affidavit also denying Defendant's ineffective assistance of counsel claims.[32] The State filed a response to the Motion on December 10, 2025.[33] On December 12, 2025, Defendant filed a response to trial

---

Motions to Dismiss the Complaint were granted, and the District Court dismissed the Complaint with prejudice. *Id.* at *2.

[24] D.I. 59.
[25] D.I. 60.
[26] D.I. 64.
[27] D.I. 75.
[28] D.I. 74.
[29] D.I. 85.
[30] D.I. 83.
[31] D.I. 88. Appellate counsel filed an amended affidavit on November 7, 2025. *See* D.I. 92.
[32] D.I. 93. Trial counsel filed an amended affidavit on December 2, 2025. *See* D.I. 94.
[33] D.I. 95.

and postconviction counsel's affidavits,[34] and on January 12, 2026, Defendant filed a reply to the State's response to the Motion.[35]

## II.  MOTION FOR POSTCONVICTION RELIEF

As noted above, on April 5, 2024, Defendant filed a Motion for Postconviction Relief.[36] In Delaware, "Superior Court Criminal Rule 61 provides the exclusive remedy for setting aside a final judgment of conviction."[37]  Rule 61 is "intended to correct errors in the trial process, not to allow defendants unlimited opportunities to relitigate their convictions."[38]  The Rule provides incarcerated persons a procedure to seek to have a conviction set aside on the ground that the court lacked jurisdiction or to collaterally attack their conviction.

Defendant's *pro se* Motion for Postconviction Relief ("Motion")[39] raises five categories of postconviction claims – 1) ineffective assistance of trial counsel; 2) ineffective assistance of appellate counsel; 3) the police conducted an illegal search; 4) judicial misconduct, and 5) prosecutorial misconduct.  Within many of those categories, Defendant has raised additional claims, and the Rule requires a Defendant to substantiate their claims with supportive facts.  Specifically, Rule 61(b)(2) requires the following:

---

[34]  D.I. 97.
[35]  D.I. 99.
[36]  D.I. 58.
[37]  *Jackson v. State*, 2007 WL 2231072, at *1 (Del. Aug. 2, 2007).
[38]  *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013).
[39]  D.I. 58.

(2) *Content of Motion.* The motion shall specify all the grounds for relief which are available to the movant and of which the movant has or, by the exercise of reasonable diligence, should have knowledge, and shall set forth in summary form the facts supporting each of the grounds thus specified.[40]

Defendant's Motion is devoid of sufficient facts to support each ground for relief listed therein.

On May 27, 2025, more than ten months after filing the Motion, Defendant filed a Memorandum of Law in Support of Rule 61 Motion ("Memorandum of Law"). In the Memorandum of Law, Defendant elaborated on the claims he asserted in the Motion. With respect to the claim that trial counsel was ineffective, he argued trial counsel failed to: "effectively and actively" communicate with him before, during and after the trial;[41] conduct an adequate investigation;[42] "subpoena, interview or investigate" requested defense witnesses; "test the adversarial system" by conducting an "insufficient cross examination or critical state witnesses and conceding key elements of state evidence during closing arguments."[43] Defendant

---

[40] Super. Ct. Crim. R. 61(b)(2).

[41] D.I. 83 at 5.

[42] *Id.* Defendant argues trial counsel's failure to properly investigate the allegations "prevented the Defendant from offering a complete defense." *Id.* at 13. He contends trial counsel's failure to discuss the witnesses the defense would call, without more, prejudiced him. *Id.* He also maintains trial counsel "failed to investigate the alleged crime scene," and did not "show [him] the search warrant." *Id.* at 13-14. Defendant asserts trial counsel should have investigated his "prescription medication history" and victim A.G.'s school records at William Penn High School. *Id.* at 14-15. Defendant argues trial counsel should have interviewed A.G. because A.G. "was in a prime position to rebut E.H.'s testimony of being sexually abused." *Id.* at 16. Finally, Defendant claims the jury instruction as to Rape in the Second Degree was erroneous. *Id.*

[43] *Id.*

claims trial counsel failed to prepare him for the presentence investigation interview, and did not review with him the completed presentence investigation report.[44] Defendant also argues trial counsel failed in his "professional duty to ensure Defendant would not be surprised,"[45] and asserts trial counsel did not effectively advocate for him during Opening Statement or Closing Argument.[46] Finally, Defendant argues trial counsel provided ineffective representation at the sentencing hearing.[47]

Defendant's ineffective assistance of appellate counsel claim argues appellate counsel failed to investigate and preserve all viable claims for relief; failed to effectively communicate; did not argue the reindictment caused a violation of his speedy trial rights; and did not contend trial counsel should have moved to sever the indicted offenses.

Third, Defendant claims the police conducted an illegal search of his residence by rummaging through his home and activating their bodycam recorders when executing a search warrant.

Fourth, Defendant alleges the trial judge committed "judicial misconduct" by: asking the jury improper *voir dire*; refusing to grant a mistrial; giving improper

---

[44] *Id.* at 7.
[45] *Id.* at 7-8.
[46] *Id.* at 9-11.
[47] *Id.* at 11-12.

instructions to testifying witnesses; allowing impermissible changes to the indictment; and providing the jury an improper jury unanimity instruction during deliberations.

Finally, Defendant claims the prosecutor committed misconduct by shifting the burden of proof to the defense; presenting an "improper" Opening Statement and Closing Argument; and eliciting perjured testimony. He also asserts the reindictment violated his speedy trial rights; and the use of an easel during the direct examination of E.G. "misled the jury." All of Defendant's claims will be addressed *infra*.

## III. APPLICATION OF RULE 61's PROCEDURAL BARS

Before considering the merit of Defendant's claims, this Court must determine whether Defendant has first satisfied the procedural requirements of Superior Court Criminal Rule ("Rule") 61.[48] Pursuant to Rule 61(i)(1)-(4), a postconviction motion may be procedurally barred for being untimely, successive, procedurally defaulted, and/or formerly adjudicated.[49] While Defendant's Motion was timely filed within one year of when the judgment of conviction became final, and it is Defendant's first postconviction motion, all of his claims except for the ineffective assistance of

---

[48] *Taylor v. State*, 32 A.3d 374, 388 (Del. 2011) (citing *Shelton v. State*, 744 A.2d 465, 474 (Del. 1999)).
[49] See Rule 61(i)(1)-(4).

counsel claims (which cannot generally be raised at trial or on direct appeal),[50] are procedurally barred pursuant to Rule 61(i)(3), and/or procedurally defaulted pursuant to Rule 61(i)(4).[51]

As to the application of Rule 61(i)(3), a Defendant must assert all grounds leading to the judgment of conviction prior to filing a postconviction motion, otherwise those claims are procedurally barred. Rule 61(i)(3) provides:

> **(3) Procedural default.** Any ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this Court, is thereafter barred, unless the movant shows:
> **(A)** Cause for relief from the procedural default and,
> **(B)** Prejudice from violation of the movant's rights.

The following claims were not raised in the proceedings leading to the judgment of conviction and are procedurally barred pursuant to Rule 61(i)(3): (a) the police conducted an illegal search; (b) judicial misconduct: the trial judge (1) violated Defendant's rights to a fair trial and impartial jury; (2) conducted improper *voir dire*; (3) provided improper instructions to key state witnesses; and (4) provided a defective instruction regarding hung jury/unanimity; and (c) all prosecutorial misconduct claims.

---

[50] *See Green v. State*, 238 A.3d 160, 175 (Del. 2020); *State v. Caulk*, 2021 WL 2662250, at *5 (Del. Super. Ct. June 29, 2021). Postconviction claims asserting ineffective assistance of counsel are not generally subject to Rule 61(i)(3)'s procedural bar, as there is no opportunity to raise an ineffective assistance of counsel claim in the proceedings leading to the judgment of conviction or on direct appeal.

[51] As Defendant does not address the application of any of Rule 61(i)'s exceptions to the procedural bars, to avoid the application of the procedural bars in Rule 61(i)(3) or (4), the exceptions are inapplicable.

Additionally, Rule 61(i)(4) prohibits this Court's consideration of formerly adjudicated claims. The Rule provides:

> Any ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred.[52]

As discussed *supra*, Defendant's arguments relating to whether this Court should have granted the defense request for a mistrial based on the testimony of Kathy Cordova, and Defendant's claim that this Court's failure to declare a mistrial compromised his Sixth Amendment right to an impartial jury, were previously adjudicated on direct appeal and therefore are procedurally defaulted pursuant to Rule 61(i)(4).

Finally, Defendant did not claim the application of any exceptions to Rule 61's procedural bars as provided in Rule 61(i)(3)(A)-(B) or Rule 61(i)(5), because Defendant did not invoke them.[53]

---

[52] Rule 61(i)(4).

[53] A defendant can avoid the application of the procedural bars in Rule 61(i)(1)-(4) if they can meet the exception noted with respect to the specific applicable bar, or if they can avail themselves of the exception noted in Rule 61(i)(5), which provides:

> The bars to relief in paragraphs (1), (2), (3), and (4) of this subdivision shall not apply either to a claim that the court lacked jurisdiction or to a claim that satisfies the pleading requirements of subparagraphs (2)(i) or (2)(ii) of subdivision (d) of this rule.

Rule 61(d)(2) provides:

> *Second or subsequent postconviction motions.* A second or subsequent motion under this rule shall be summarily dismissed, unless the movant was convicted after a trial and the motion either:

14

Therefore, I recommend each of the procedurally defaulted claims noted *supra* be summarily dismissed as procedurally defaulted pursuant to Rule 61(i)(3) and/or formerly adjudicated pursuant to Rule 61(i)(4).

## IV. CONSIDERATION OF DEFENDANT'S CLAIMS.

I will now address the merits of Defendant's claims. As is discussed below, Defendant's claims are meritless and do not satisfy *Strickland's* heightened prejudice standard – Defendant has failed to show that counsel's representation was unreasonable and but for trial counsel's alleged errors, the result of the trial would have been different.

### 1. Ineffective assistance of trial counsel.

In order to prevail on an ineffective assistance of counsel claim, a defendant must show: (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[54] A

---

(i) Pleads with particularity that new evidence exists which creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted; or
(ii) Pleads with particularity a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the conviction or death sentence invalid.

[54] *Strickland v. Washington*, 466 U.S. 688, 694 (1984).

"reasonable probability is a probability sufficient to undermine confidence in the outcome."[55]

"The standard for judging counsel's representation is a most deferential one."[56] There is a strong presumption that counsel's legal representation was competent and falls within the "wide range" of reasonable professional assistance.[57] Trial counsel "observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge."[58] The seminal question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.[59] As such, mere allegations will not suffice; instead, a defendant must make concrete allegations of ineffective assistance, and substantiate them, or risk summary dismissal.[60] Deference must be given to defense counsel's judgment in order to promote stability in the process.[61]

To overcome the strong presumption that trial counsel provided competent representation, a defendant must demonstrate that "counsel failed to act reasonabl[y]

---

[55] *Id.*
[56] *Premo v. Moore*, 562 U.S. 115, 122 (2011); *also see Flamer v. State*, 585 A.2d 736, 753-54 (Del. 1990) (citations omitted).
[57] *Premo*, 562 U.S. at 122-23.
[58] *Id.*
[59] *Id.* (citing *Strickland*, 466 U.S. at 690).
[60] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).
[61] *State v. Fithian*, 2016 WL 3131442 at *3 (Del. Super. May 25, 2016) (citing *Premo*, 562 U.S. at 120-22).

considering all the circumstances" and that the alleged unreasonable performance prejudiced the defense.[62] The essential question is whether counsel made mistakes so crucial that they were not functioning at the level guaranteed by the Sixth Amendment, thereby depriving defendant of a fair trial.[63]

Because a defendant must prove both parts of an ineffectiveness claim, this Court may dispose of a claim by first determining that the defendant cannot establish prejudice.[64] The first consideration in the "prejudice" analysis "requires more than a showing of theoretical possibility that the outcome was affected."[65] "It is not enough to 'show that the errors had some conceivable effect on the outcome of the proceeding.'"[66] Defendant must show a reasonable probability of a different result (*i.e.*, an acquittal) but for counsel's alleged errors.[67]

Defendant argues trial counsel's performance was deficient in almost every respect – from pre-trial preparation and investigation to opening statement, cross-examination, witness selection, closing argument, post-trial sentencing preparation, and sentencing. Defendant summarily claims trial counsel failed to communicate with him, advocate for him, and he completed an "inadequate and non-existent investigation of background work into the indicted offenses, state witnesses and

---

[62] *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 688).
[63] *Id.*
[64] *Strickland*, 466 U.S. at 697.
[65] *Frey v. Fulcomer*, 974 F.2d 348, 358 (3rd Cir. 1992).
[66] *Harrington v. Richter*, 131 S.Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 693).
[67] *Strickland*, 466 U.S. at 695.

requested defense witnesses."[68] Defendant further contends trial counsel failed to subpoena, interview, investigate or call to testify suggested defense witnesses.

Defendant also asserts trial counsel violated his "professional duty to ensure the defendant would not be surprised" and argues if trial counsel communicated with him more, his cross-examinations would have been more effective.[69] Defendant also claims that if he knew about E.H.'s anticipated uncharged conduct testimony, he would have "been in a better position in making a proper determination as to accepting or rejecting the plea."[70]

Trial counsel denies all of Defendant's ineffective assistance claims. Trial counsel met with Defendant on numerous occasions "prior to the initiation of the charges and subsequent to those charges,"[71] and, he received "many, many items of correspondence indicating factual matters relating to the case which were the subject matter of investigation."[72] Trial Counsel reviewed all police reports and statements of the three alleged victims – all of which he shared with Defendant. Trial counsel also consulted Defendant so that "Defendant's insights [were] provided to counsel in anticipation of trial."[73] Before trial, trial counsel communicated extensively with

---

[68] D.I. 83, p. 5.
[69] *Id.*
[70] *Id.* at 9. Defendant steadfastly maintained his innocence and the record reflects he knowingly and voluntarily rejected the State's plea offer. And, he denied, under oath, all sexual misconduct claims.
[71] D.I. 93.
[72] *Id.*
[73] *Id.* ¶ 3.

Defendant in writing and over Zoom meetings – meeting with Defendant on four occasions in the month prior to trial "to go over with [Defendant] factual matters relating to the trial, the testimony that [Defendant] insisted on giving during the trial, and other matters relevant thereto." Counsel also communicated with Defendant throughout the trial and his associate, Molly Dugan, Esquire, was also in regular contact with him.[74]

Trial counsel considered, and ultimately declined to call, the following defense witnesses: Luis Cordova, Amberlyn Lowry, and a toxicologist.[75] As to the other witnesses Defendant suggested counsel call as witnesses, trial counsel considered, but ultimately declined to call them, as he concluded they "could be of no assistance to the defense in the presentation of the case."[76]

As to Defendant's post-verdict ineffective assistance of counsel claims, trial counsel found no reason to discuss with Defendant his statement to the presentence officer before the presentence interview, as Defendant "at all times denied commission of the offenses and therefore his interview with the Presentence Officer would only mirror those points."[77]

---

[74] *Id.* ¶ 5.
[75] *Id.* ¶ 7.
[76] *Id.* ¶ 8.
[77] *Id.* ¶ 10.

Finally, trial counsel discussed with Defendant that witness Don Hagans broke into Defendant's home with one of the victims, and he elicited testimony to that effect on cross-examination.[78] He also discussed the State's plea offer with Defendant in advance of trial, and defendant chose to reject the plea offer.[79]

A review of the trial record does not support Defendant's ineffective assistance of trial counsel claims. More importantly, Defendant has failed to demonstrate prejudice – he has not shown a reasonable probability that but counsel's alleged errors, the result of the proceeding would have been different (*i.e.*, that Defendant would have been acquitted of all charges).

Trial counsel's affidavit refutes many of Defendant's claims, and, perhaps more importantly, a comprehensive review of the trial transcript demonstrates trial counsel's performance was objectively reasonable and fell within the wide range of reasonable professional assistance.

### a. Defective opening statement.

Defendant first argues "Counsel's opening statements to the jury undermined the defendant's key interests in his innocence."[80] He takes issue with trial counsel's concession that Defendant acted as a father figure to A.G., even though the evidence presented by the State at trial demonstrated he acted in a paternal manner toward all

---

[78] *Id.* ¶ 11.
[79] *Id.* ¶ 12.
[80] D.I. 83 at 10.

the victims, and his sworn testimony confirmed it.[81]  Now, without further explanation, Defendant argues it was prejudicial to concede this issue.  The evidence of Defendant's close relationship with A.G. was established by the State's witnesses, and Defendant has failed to claim that the result of the trial would have been different but for counsel's strategic decision to concede Defendant's close and paternalistic relationships in opening statement.  Defendant's claim is meritless.

A review of trial counsel's opening statement transcript demonstrates that he was prepared for trial, understood the issues, and delivered an effective opening statement.  The opening statement served as a roadmap for the defense.  Trial counsel initially informed the jury that the case against Defendant was based solely on the bald accusations of three victims.  Trial counsel explained:

> So this is a case, you will hear, based entirely, and I say entirely, on the uncorroborated – by corroborated I mean more than just somebody saying something.  So in order to corroborate something you might have some other piece of evidence that will make more certain what the person is saying. But when all you have is what a person is saying, then that is not corroborated.
> So this is a case based entirely on the uncorroborated word of three young boys, two of whom are now adults, all of them directly or indirectly had contact with each other at various times prior to the filing of these charges.
> A case in which there is no physical evidence, and none was mentioned by the State [it its opening statement].  No DNA.  No surveillance.  No cell phone evidence. No medical testimony as to anything that was happening.  And no contemporaneous disclosures by any of the alleged

---

[81]  To provide one example, Defendant testified he helped raise A.G. and agreed to become A.G.'s guardian in 2017.  (D.I. 48 at 48:1–16).

> victims in the case to add weight to the verity of the allegations that are being made.
>
> Erik's allegations before they are even mentioned go back ten or eleven years, all right. Mr. Garcia's go back at least two years prior to the time they are disclosed, And then we have A.D., and I'll talk about A.D. and the evidence relating to A.D. when I'm done here.[82]

Trial counsel highlighted perceived defects in the prosecution's case – that the allegations against Defendant from the three victims were (a) not contemporaneous, (b) in all instances uncorroborated, and (c) unsupported by any evidence other than the victims' allegations – physical or otherwise.[83] Trial counsel explained that the State would not present any physical evidence, DNA, surveillance or cellphone evidence, medical testimony or medical records" which could have corroborated the victims' claims of sexual abuse.[84]

Trial counsel also addressed the allegations related to each victim, identifying inconsistencies between the victims' claims of sexual assault and their desires to live with, and be parented by, the Defendant. For example, with respect to the sexual assault allegations raised by A.G., trial counsel previewed for the jury text messages between Defendant and A.G. in 2018, when A.G. expressed a desire to live with Defendant so that he would be less likely to make "reckless and dumb" decisions and be "better parented."[85] A.G. also sent Defendant the following text: "I couldn't

---

[82] D.I. 46 at 46:2 – 47:4.
[83] D.I. 46 at 46:2 – 47:17.
[84] *Id.*
[85] *Id.* at 48:9 – 49:9.

ask for a better parent. I must mature and stop acting childish. I'm ready to change that now. I'm sorry."[86] Trial counsel used A.G.'s text messages to question the veracity of A.G.'s sexual abuse claims, suggesting A.G.'s conduct was inconsistent with a claim of abuse and therefore not credible.

Trial counsel next addressed E.H.'s allegations of Defendant performing oral sex on him almost daily between 2008 and 2012,[87] telling the jury that in E.H.'s first police interview, E.H. expressly denied Defendant engaged in intercourse with him, and did not make any claim of sexual abuse.[88] Trial counsel also obtained E.H.'s Florida school records, which would show that E.H. was living in Florida for three of the four years E.H. claimed he was abused by Defendant in Delaware on an almost daily basis.[89] As a result, trial counsel suggested E.H.'s claims were neither corroborated nor credible.[90] Finally, after E.H. did make a disclosure of sexual abuse, he still went on several vacations alone with the Defendant, behavior inconsistent with a teenage victim of repeated sexual assault who, after being abused, continues to spend time alone with their assailant.[91]

Finally, trial counsel told the jury that victim A.D. did not disclose sexual abuse until A.D. spoke with Don Hagans, who was "out to get" the Defendant and

---

[86] *Id.* at 49:19-21.
[87] *Id.* at 52: 6-10.
[88] *Id.* at 52:15-21.
[89] *Id.* at 52:11-14.
[90] *Id.* at 53:4-14.
[91] *Id.* at 54:1-12.

had motive to put Defendant in jail so he could "take over his finances."[92]    And, A.D. claimed to have been sexually assaulted by Defendant, "just like A.G.," but A.D. conceded at trial he did not speak to A.G., suggesting A.D.'s disclosure was not credible.[93]

Defendant's claim that trial counsel was unprepared for opening statement is not supported by the record.    Defendant has not identified any credible record evidence that trial counsel was unprepared. The opposite is true, and Defendant's claim is meritless.

### b. Ineffective witness cross-examination.

Defendant next argues "counsel failed to test the adversarial system with an insufficient cross-examination of critical state's witnesses . . ."[94] He later asserted trial counsel "failed to effectively cross-exam E.H. with trial prep notes prepared by the State" regarding the fact that E.H. had also been provided pills by Defendant.[95] Defendant speculates that if counsel had asked E.H. about the pills, "it would have led to reasonable doubt as to the veracity of E.H.'s claims."[96]

Delaware courts have long recognized that whether to call a witness, and how to cross-examine those who are called, are tactical decisions left to counsel's

---

[92]  *Id.* at 55:9–23.
[93]  The jury acquitted Defendant as to all charges related to A.D.
[94]  D.I. 83 at 5.
[95]  *Id.* at 17.
[96]  *Id.*

judgment alone.[97]   So long as the decision to cross-examine a witness is made reasonably, it does not constitute a basis for a claim of ineffective assistance of counsel.[98]   Trial counsel is provided considerable discretion whether or how to cross-examine a witness, and a review of the record transcript demonstrates trial counsel's cross-examination of E.H. was reasonable and effective.  And, E.H. conceded on cross-examination that his four-year claim of being sexually assaulted almost daily was impossible, since he lived in Florida for three of those four years.  Defendant cannot demonstrate prejudice, and the claim is meritless.

*c. Failure to investigate.*

Defendant argues trial counsel failed to properly investigate the State's prosecution.  When considering a failure of the duty to investigate claim, the Delaware Supreme Court has held:

> *Strickland* does not require that counsel pursue every line of investigation no matter how unlikely to uncover helpful evidence it would be.  The duty to investigate requires only that investigatory decisions be reasonable.  It does not require that a criminal defense attorney leave no stone unturned and no witness unpursued.  This is because defense lawyers have limited time and resources, so they must choose among countless strategic options.[99]

---

[97]   *State v. Saavedra*, 2025 WL 3771270, at *8 (Del. Dec. 30, 2025) (citing *Shelton*, 744 A.2d at 479.

[98]   *Id.*

[99]   *Id.* at *10 (citing *Cooke v. State*, 383 A.3d 418, 469 (Del. 2025)) (cleaned up).

Defendant has failed to identify any compelling evidence counsel should or would have discovered during a pre-trial investigation other than what was reviewed, and he has failed to show how that omission establishes prejudice under *Strickland*.[100] As the Supreme Court held in *Cooke v. State*, a Defendant's "bald assertion that counsel could have conducted a more granular investigation cannot overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[101]

The record reflects that trial counsel investigated, *inter alia*, E.H.'s Florida school records, records which contradicted E.H.'s claim that Defendant performed oral sex on him almost every day for four years, and trial counsel used text messages between the Defendant and E.G. to impeach E.G.'s claim that Defendant sexually assaulted him. Trial counsel's investigation was reasonable, and Defendant has failed to demonstrate that conducting additional investigative efforts would have affected the outcome of the trial – *i.e.*, that the result of the proceeding would have

---

[100] Defendant argues trial counsel should have investigated the alleged crime scene, where he "would have been able to secure items that were allegedly used in the abuse of A.G.: the grey laptop, the black chair and the towel," and he speculates that "the items could have been forensically tested to refute the allegations." D.I. 83 at 13-14. Trial counsel's investigation was reasonable under the circumstances, and there is no reason to conclude unspecified "forensic testing" would have led to the discovery of incriminating evidence, or that the absence of incriminating evidence would have resulted in the only outcome favorable to Defendant – that he was innocent in fact of the indicted offenses.

[101] *Id.* (citing *Cooke*, 338 A.3d at 469 (quoting *Thompson v. State*, 296 A.2d 872, 878 (Del. 2023)).

been different if additional investigative steps were taken. Defendant's claim is meritless.

> ### d. Failure to call witnesses.

Focusing next on Defendant's claim that trial counsel failed to call several witnesses to testify during the defense case, the Supreme Court has held that whether to call a witness, and how to cross-examine those who are called, are strategic decisions.[102] "[S]trategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."[103] So long as the decision to call a witness or to cross-examine a witness is made reasonably, it will not constitute a claim of ineffective assistance of counsel.[104] And here, Defendant has failed to establish trial counsel's decision with regard to witness presentation was unreasonable.

The record reflects trial counsel did consider whether Defendant's suggested witnesses should be called as part of the defense case, but he ultimately concluded those witnesses could not assist the defense.[105] And, trial counsel did call four

---

[102] *Saavedra*, 2025 WL 3771270, at *8 (citing *Shelton*, 744 A.2d at 479).
[103] *Ploof*, 75 A.3d at 821 (quoting *Strickland*, 466 U.S. at 690-91).
[104] *Id.*
[105] D.I. 93 ¶¶ 7-8.

witnesses – Lanean Gilmore,[106] Jennifer Wheatley,[107] Detective Joshuah Smith,[108] and the Defendant[109] – during the presentation of the defense's case at trial. Defendant's claim is meritless.

### e. Defective closing argument.

Defendant argues trial counsel's closing argument was "constitutionally ineffective."[110] Specifically, Defendant contends it was improper to inform the jury that the charges against him were serious. Defendant explains this argument as follows:

> Counsel's closing statements during trial and argument during sentencing were constitutionally ineffective. During closing, counsel "unnecessarily stressed the seriousness of E.H.'s charges. Trial counsel on three separate occasions mentions the "seriousness of the charges." "Rape in the second degree, which is the most serious. . ." Rape second degree is the most serious. . .. [E.H.'s] charge is the most serious charge, rape in the second degree." Counsel telling the jury, "it is not an easy thing to return a verdict of not guilty" completely goes against the best interest of the client.[111]

Defendant's argument is misplaced. Rape in the Second Degree was the most serious indicted offense. It is a Class B violent felony, requiring a mandatory sentence of ten years incarceration at Level V, up to twenty-five years imprisonment. It is one of Delaware's most serious charges. Trial counsel's statements were

---

[106] D.I. 49 at 217:6 – 226:19.
[107] *Id.* at 236:3 – 246:7.
[108] *Id.* at 249:9 – 261:5.
[109] D.I. 48 at 50:13 – 103:16.
[110] D.I. 83 at 11.
[111] *Id.*

28

factually accurate and communicated to the jury the serious import of the deliberations they were to engage in and the verdict they were required to consider.

*Strickland's* demanding standard requires the Defendant establish *prejudice* – that but for trial counsel's alleged errors, the outcome of the proceeding would have been different.   In closing argument, trial counsel did not concede guilt as to this or any other charged offense, and he did not minimize the jury's need to meaningfully deliberate when reaching a verdict.  Defendant has failed to identify any fact(s) that the jury could have relied upon which would have led them to reach a not guilty verdict as to any other additional counts assuming an alternative closing argument.

Moreover, a review of trial counsel's closing argument demonstrates trial counsel gave a reasonable, effective presentation.[112]   Trial counsel's closing argument fell within the "wide range of reasonable professional assistance" expected by a competent attorney.   Defendant has failed to identify any defective or prejudicial argument or specific prejudice resulting from trial counsel's closing argument.  In fact, Defendant being found not guilty as to four of the remaining nine counts of the superseding indictment "rebuts any assertion of prejudice."[113]

---

[112]   D.I. 47 at 49:23 – 95:23.
[113]   *State v. Morse*, 2016 WL 3044734, at *6 (Del. Super. Ct. May 11, 2016) ("Defendant's arguments regarding   ineffective   assistance   of   counsel   with   regard   to the closing arguments fail because, again, defendant does not attempt to show prejudice from [defense counsel's] closing. Defendant's being found not guilty on 2 counts and guilty of a lesser included charge on 1 count certainly rebuts any assertions of prejudice.")

29

*f. Failure to prepare Defendant for the presentence interview.*

Defendant argues trial counsel was ineffective for failing to prepare him for the presentence interview. Trial counsel denies this claim, asserting that Defendant steadfastly maintained his innocence, and he expected Defendant to maintain his innocence during the presentence interview, making additional preparation unnecessary.

At trial, Defendant explicitly denied the sexual abuse allegations levied by all three victims.[114] As to victim A.D., the jury found the State did not prove Defendant's guilt beyond a reasonable doubt. However, the jury unanimously concluded the State proved beyond a reasonable doubt that Defendant was guilty of the offenses involving E.H. and A.G.. A reasonable interpretation of the verdicts is that the jury accepted the testimony of E.H. and A.G. as credible (as there was no corroborating evidence presented by the State to support the charged offenses), and did not find Defendant's denials believable or compelling. Defendant's testimonial denials were consistent with the position he maintained with trial counsel before and throughout the trial – that he never engaged in sexual activity with any victim. Defendant cannot demonstrate prejudice from trial counsel's failure to prepare him

---

[114] Defendant denied all allegations of sexual assault/misconduct. He denied placing his hand on A.G.'s butt (D.I. 48 at 56:6-16); forcing A.G. to masturbate (D.I. 48 at 65:1-5); also see D.I. 48 at 83:9 – 84:6) or possessing a stimulator machine which he would attach to A.G.'s genitals. D.I. 48 at 80:10-22. Defendant also denied engaging in oral sex with E.H. (D.I. 48, 87:4--8); and having any sexual contact with A.D. D.I. 48 at 93:13-15. In fact, Defendant summarily denied engaging in any sexual contact with all three purported victims. D.I. 48 at 103:8-11.

for the presentence interview. Defendant was not expected to admit wrongdoing to the presentence officer, and he testified under oath consistent with same. Defendant has not identified prejudice he suffered from not receiving presentence interview advice from counsel. Defendant's claim is meritless.

g. *Failure to show Defendant the presentence report prior to sentencing.*

Defendant claims trial counsel failed to share the contents of the presentence report prior to sentencing. In Delaware, a defendant has a qualified right to review a presentence report through counsel. Superior Court Criminal Rule 32(c)(3) provides:

> At least 7 days before imposing sentence, unless this minimum period is waived, the court shall allow the defendant's counsel or, when the defendant is acting *pro se*, the defendant and the attorney general to read the report of the presentence investigation, including the information required by subdivision (c)(2) but not including any final recommendation as to sentence.

As Defendant was represented by counsel, he did not have an absolute right to review the presentence report. But, even if Defendant was entitled to review the report with trial counsel, he has failed to articulate prejudice. In *State v. Dombrosky*, this Court addressed a similar claim where a defendant alleged trial counsel failed to review the presentence report before sentencing, ultimately holding that "defendant has failed to show what prejudice he suffered from counsel not reviewing the information" and that the defendant "has not shown that by reviewing the PSI report counsel could have done anything which would have resulted in a different

31

outcome of the sentence."[115]  Defendant has similarly failed to establish prejudice, and he has not explained how allowing him to review the presentence report would have resulted in a different sentence. Defendant's claim is meritless.[116]

Defendant also generally claims trial counsel's performance at sentencing was unreasonable, quoting trial counsel as saying, "[there's] not much for me to say at sentencing," and to Defendant, that statement amounted to "nothing."[117]  But Defendant did not comprehensively quote trial counsel's statement.  What trial counsel said to this Court was:

> Your Honor – I am  -- as always in cases of this nature where there is a trial in which the defendant denies commission of the offenses, there is not much for me to say at sentencing.  There is a lot of mandatory time here, as the Court knows.  I can't really take issue.  We had a trial and Mr. Williams had an opportunity to present his side of the case to the jury who rejected it on most of the – well, several of the counts.  So we ask the Court to be reasonable in the sentence.  Thank you.[118]

While Defendant contends trial counsel's brief remarks were ineffective, he has failed to articulate what trial counsel should have said at sentencing that would have resulted in a different or more lenient sentence, and he fails to acknowledge that part of trial counsel's reticence was based on the fact that Defendant denied the sexual

---

[115] *State v. Dombrowski*, 1999 WL 743672, at *5 (Del. Super. Ct. Aug. 10, 1999).
[116] Defendant also claims trial counsel failed to meet his "professional duty to ensure [he] would not be surprised."  D.I. 83 at 7-9.  There is no such duty.  Trials are unpredictable and surprises are common.  Defendant's subjective suggestion that if counsel shared more information with him would have resulted in a better or more productive performance does not constitute prejudice.
[117] D.I. 83 at 12.
[118] D.I. 53 at 11:7-20.

assault allegations under oath at trial and was nevertheless convicted. Defendant's claim is meritless.[119]

Finally, Defendant suggests this Court's jury instruction as to the element of intent in the Rape Second Degree charge was erroneous.[120] It was not.[121] Defendant's claim is meritless.

Although Defendant contends trial counsel was ineffective in almost every aspect of representation, it is important to recognize that, upon the State proceeding with a superseding indictment, Defendant was facing the prospect of being convicted for twenty offenses.[122] Trial counsel successfully argued a Motion for Judgment of Acquittal, the result being this Court granting trial counsel's motion as to six pending felony charges.[123] And, after meaningful deliberation, the jury acquitted Defendant

---

[119] Defendant also contends counsel was ineffective for failing to "properly investigate the defendant's prescription medication history. . .." Not so. First, trial counsel is not required to investigate every aspect of a prosecution – counsel is only required to act reasonably. And here, Defendant spent considerable time testifying about his prescription medication intake and history, and he has failed to articulate how investigating his prescription medication history would have benefitted the defense. D.I. 48 at 65:6 – 67:6.

[120] D.I. 83 at 16.

[121] Compare this Court's jury instruction defining "intentionally" – "intentionally means it was Defendant's conscious object or purpose to have sexual intercourse with the person;" with 11 *Del. C.* § 231(b)(1) –

"(b) "Intentionally". -- A person acts intentionally with respect to an element of an offense when:
(1) if the element involves the nature of the person's conduct or a result thereof, it is the person's conscious object to engage in conduct of that nature or to cause that result."

[122] D.I. 23.

[123] D.I. 34 at 4; *also see* D.I. 48 at 1:4 – 32:21.

of four of the nine remaining charges.[124]  Defendant's ineffective assistance of trial counsel claim is meritless.

## 2. Ineffective assistance of appellate counsel.

When considering a claim of ineffective assistance of appellate counsel, this Court applies the same as *Strickland* standards discussed *infra* – a defendant must demonstrate appellate counsel's representation fell below an objective standard of reasonableness, and there remains a reasonable probability that, but for appellate counsel's errors, the result of the appeal would have been different.[125]  In this context, there is a presumption that appellate counsel's representation was professionally reasonable,[126] and a defendant must raise concrete allegations of actual prejudice and substantiate them to warrant relief.[127]

In addition, to establish that appellate counsel's performance was unreasonable, a Defendant must also

> show that counsel failed to find arguable, nonfrivolous issues to appeal and to file a brief raising them.  Appellate counsel need not raise every nonfrivolous claim, but rather may select arguments that maximize the likelihood of success on appeal.  Therefore, when appellate counsel files a merits brief raising issues for consideration on appeal, a defendant who argues that counsel was ineffective for failing to raise an argument on appeal must show that the argument that was not

---

[124]  D.I. 34 at 2.
[125]  *Ryle v. State*, 2020 WL 2188923 at *2 (Del. May 5, 2020), citing *Harris v. State*, 2018 WL 3239905, at *2 (Del. July 2, 2018) (citing *Strickland*, 466 U.S. at 687-88).
[126]  *Id.* (citing *Albury v. State*, 551 A.2d 53, 59 (Del. 1988)).
[127]  *Id.* (citing *Younger v. State*, 580 A.2d 552, 556 (Del. 1990)).

presented was "clearly stronger" than the arguments that were presented.[128]

Defendant contends appellate counsel provided ineffective representation because he "failed to properly investigate and preserve all viable claims for relief on direct appeal."[129] Additionally, Defendant argues appellate counsel failed to communicate with him and allow him to be "an active participant in the appellate stage."[130] Defendant identified two potential appellate issues that were not raised in the direct appeal – (a) that the reindictment violated his speedy trial rights,[131] and (b) trial counsel's failure to move to sever the offenses prior to trial, specifically citing to "the nature and number of charges to which defendant would be required to offer multiple defenses thus causing potential confusion with the jury."[132] But Defendant does not claim those issues were "clearly stronger" than the issues raised by appellate counsel.

In response, appellate counsel submitted an affidavit[133] and an amended affidavit[134] denying Defendant's claims. Appellate counsel "maintained contact with [Defendant] through written correspondence and phone calls, informed [Defendant] of all significant case developments, and provided copies of the filed

---

[128] *Id.* (citing *Neal v. State*, 80 A.3d 935, 946 (Del. 2013)).
[129] *Id.* at 20.
[130] *Id.*
[131] *Id.* at 22.
[132] *Id.*
[133] D.I. 88.
[134] D.I. 92.

briefs and orders."[135] He also "raised arguments reasonably available based on the record from trial court proceedings, including those most likely to provide relief on appeal,"[136] and asserted he "thoroughly reviewed the trial record, transcripts, and relevant legal authorities," conducting the necessary legal research to present Defendant's claims to the Supreme Court.[137]

On October 23, 2022, appellate counsel timely filed an Opening Brief, and on February 22, 2023, he participated in oral argument before the Supreme Court. Attached to appellate counsel's affidavit are communications between himself, Defendant and Jennifer Wheatley, among others, discussing substantive issues considered for the direct appeal. Appellate counsel argues Defendant's allegations are "conclusory and unsupported by any specific facts or record evidence."[138]

A review of the record demonstrates Defendant's ineffective assistance of appellate counsel claim is meritless. Defendant has failed to show that appellate counsel's representation fell below an objective standard of reasonableness, and but for appellate counsel's errors, the result of the appeal would have been different. And, he has not shown that his proposed claims are "clearly stronger" than the ones raised and argued by appellate counsel. The presumption that appellate counsel's

---

[135] D.I. 88 ¶ 5. This contact included maintaining regular contact with Jennifer Wheatley, who hired appellate counsel on Defendant's behalf. D.I. 92 ¶ 10.
[136] *Id.* ¶ 6.
[137] *Id.* ¶ 7.
[138] D.I. 92 ¶ 11.

performance was professionally reasonable is supported by the record. The Defendant has failed to demonstrate that an argument not presented, whether it be an alleged violation of his speedy trial rights or the failure to request a severance of offenses, was "clearly stronger" than the arguments which were presented to the Supreme Court. The merit of Defendant's proposed arguments are briefly addressed below.

*a. Speedy trial.*

Defendant claims that the superseding indictment infringed on his right to a speedy trial. This claim fails for two reasons. First, Defendant has not explained how a speedy trial claim survives the well-established legal analysis of the United States Supreme Court in *Barker v. Wingo*,[139] or how the application of *Barker's* four-factor balancing test would result in a successful speedy trial claim. Defendant has not addressed the length of the delay, the reason for the delay, the assertion of his right to a speedy trial, and the resulting prejudice.

Second, Defendant's speedy trial claim is not supported by the record. The docket reflects that this Court issued a scheduling Order on May 17, 2021, setting a trial date of June 28, 2021.[140] Approximately nine days later, the State requested a continuance of the trial date due to attorney unavailability, and on June 3, 2021 this

---

[139] *Barker v. Wingo*, 407 U.S. 514 (1972).
[140] D.I. 15.

Court granted the State's request,[141] rescheduling the trial to November 1, 2021. On June 30, 2021, this Court rescheduled the trial date a second time to November 15, 2021 at Defendant's request because of attorney unavailability.[142] A revised scheduling Order was issued on June 30, 2021, confirming the trial date of November 15, 2021.[143]

The State obtained a superseding indictment on October 25, 2021, but the trial date did not change.[144] On November 1, 2021, Defendant rejected a plea at final case review, and trial began on November 12, 2021, three days earlier than noted on the trial scheduling Order.[145] The trial date was neither amended nor extended due to the superseding indictment. There is no speedy trial violation.

*b. Motion to sever.*

As to Defendant's second claim – that trial counsel should have filed a motion to sever and appellate counsel should have raised this claim on direct appeal, this claim is equally suspect. First, his assertion that severance was appropriate due to "the nature and number of charges to which defendant would be required to offer multiple defenses this causing potential confusion with the jury" is not credible. The defense(s) as to all victims were consistent – Defendant did not commit the charged

---

[141] D.I. 18.
[142] D.I. 19.
[143] D.I. 20.
[144] D.I. 23.
[145] D.I. 31.

offenses, there is no corroborating evidence, the victims were not credible, and the State's evidence was insufficient to prove otherwise. In fact, the prosecution case as to each victim was the same – delayed disclosures of sexual assault allegations by young male victims, two of whom are brothers, all lacking corroboration. Defendant's claim that the charges caused potential confusion by the jury are speculative and belied by the fact that the jury (a) submitted two notes to the Court for clarification during deliberations, and (b) returned four not guilty verdicts as to victim A.D. – demonstrating the jury independently considered each indicted offense. Defendant has not identified any evidence suggesting the jury was confused.

Moreover, to raise a severance claim on direct appeal when it was not raised in the trial court, Defendant's argument would be limited on appeal because the Supreme Court generally declines to review contentions not fairly presented to the trial court for decision unless the justices find "that the trial court committed plain error requiring review in the interests of justice." This standard requires an error so "clearly prejudicial to [a defendant's] substantial rights as to jeopardize the very fairness and integrity of the trial process."[146] And here, Defendant has failed to articulate how severance of offenses was appropriate or how appellate counsel

---

[146] *Hoskins v. State*, 102 A.3d 724, 728 (Del. 2014).

would have established plain error, and he has not demonstrated prejudice – that the result of the proceeding would have been different if the offenses were severed.

### 3. The police conducted an illegal search.

Defendant's third claim is that the police engaged in an (a) exploratory rummaging of his home by exceeding the scope of the search warrant, and (b) conducted an "illegal search" because they activated their body cam recorders when executing a residential search warrant at his home.[147]  As to Defendant's first claim, the scope of a search pursuant to a warrant is limited by the objects the police are authorized to search for and seize.  Here, Defendant's conclusory statement fails to provide specific facts how the police exceeded the scope of the search warrant.

Second, Defendant has provided no legal authority for the proposition that conducting a search authorized by a duly issued search warrant while recording the search with bodycam devices is illegal.  In fact, it is not illegal, and doing so serves to protect the police from future claims that they violated the rights of the property owner during the execution of a search warrant.  The contemporaneous recording by law enforcement memorializes the search for potential future review.  Defendant has failed to articulate any illegal behavior by law enforcement in searching the residence, and he has not claimed that the police exceeded their authority in seizing property not authorized in the search warrant.  In fact, the record reflects that no

---

[147]  D.I. 58 at 3.

property was seized.  Defendant's claim is meritless, and he has failed to demonstrate prejudice.

## 4. Judicial Misconduct.

Defendant argues that the Judge committed misconduct by failing to ask jurors about familiarity with locations in *voir dire*, failing to grant mistrial requests, improperly instructing State's witnesses, and improperly responding to a jury question.

*a. Improper voir dire.*

Considering each judicial misconduct claim independently, as to the trial Judge's failure to ask a question during *voir dire*, Defendant has not identified a defect in the jury selection process, nor has he explained how the Judge's purported failure to ask a particular *voir dire* question regarding a potential juror's familiarity with a particular location prejudiced him, or that an answer to that question would be somehow disqualifying.  This claim is meritless.

*b. Failure to grant a mistrial.*[148]

Defendant contends this Court erred in not granting trial counsel's mistrial applications. The record reflects trial counsel repeatedly objected when he believed the State exceeded the limitations of the direct examination of witnesses imposed by

---

[148] This claim is procedurally barred pursuant to Rule 61(i)(4), as it was previously adjudicated on direct appeal.

the judge, and appellate counsel effectively argued the trial court should have declared a mistrial based on Defendant's conduct. And the Supreme Court rejected Defendant's claim that the trial court failed to grant the Defense's mistrial requests in the absence of a *sua sponte* mistrial declaration, concluding the trial court did not abuse its discretion in denying defense counsel's requests for a mistrial. Applying *Taylor v. State*,[149] the Supreme Court concluded the trial judge did not abuse her "considerable discretion" when she, *inter alia*, provided the jury a curative instruction to disregard specific comments made during witness testimony.[150] Defendant's claim is meritless.

### c. *Improper witness instructions.*

Defendant argues it was improper for the trial judge to direct Ms. Cordova, E.H. and A.G. to respond "yes" or "no" to questions. The Supreme Court has held a trial judge is responsible for management of the trial and is vested with the broad discretion to perform that function.[151] In addition, Delaware Rule of Evidence ("DRE") 611 provides the trial judge authority to determine the mode and manner of a witness's testimony. DRE 611 provides:

> (a) **Control by court.** The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to

---

[149] 690 A.2d 933 (Del. 1997).
[150] *Williams*, 296 A.3d at 903.
[151] *Czech v. State*, 945 A.2d 1088, 1095 (Del. 2008).

> (1) make the interrogation and presentation effective for the ascertainment of the truth,
> (2) avoid needless consumption of time, and
> (3) protect witnesses from harassment or undue embarrassment.

Given the witness's inability to follow the Prosecutor's instructions, the trial Judge's limiting the witness's answers was proper, and the Defendant cannot establish prejudice. This claim is meritless.

### d. Allowing impermissible substantive changes to the Indictment.

Defendant contends the trial judge "allowed impermissible substantive changes to [the] indictment shifting [the] burden to [the] defense.[152] Defendant's claim is not supported by the record. As the trial date approached, the State presented a superseding indictment to the Grand Jury. After considering the evidence presented by the State, the Grand Jury issued a true bill as to the charges in the superseding indictment. *The trial judge was not involved with the superseding indictment,* and there is no evidence the language in any revised or newly included charge in the superseding indictment "shifted the burden [of proof] to the defense." Defendant's claim is not supported by the record.

### e. Response to jury deliberations regarding hung jury/unanimity.

Finally, the record reflects there were two questions asked by the jury for clarification during deliberations. The first inquired whether the jury could "use the

---

[152] D.I. 58 at 4.

bodycam footage at A.I. Hospital as testimony and reference in our deliberations."[153]

This was followed by a second question that Defendant argues was improper -- specifically when the jury asked "do we need to be unanimous on each separate count?"[154] In addressing this second juror note, the judge instructed the jury as follows, consistent with Delaware law and the jury instructions:

> On the verdict sheet it says members of the jury, there are nine counts in this case and therefore nine separate verdicts would be required. And at the bottom of that it says, on the very last page, your verdict must be unanimous, and I would add, as to each count.[155]

The trial judge's response to the jury was a correct statement of law, and it referred the jurors to the jury instructions and verdict sheet. In Delaware and every other state and federal court in the United States, jury verdicts in a criminal prosecution must be *unanimous* as to each charged offense.[156] Defendant's claim is meritless.

### 5. Prosecutorial Misconduct.

a. *The Prosecution shifted the Burden of Proof.*
b. *State's Opening and Closing Statements were Improper.*
c. *The State Elicited Perjured Testimony.*

Defendant asserts, without factual support, evidence or authority, that (1) the Prosecutor shifted the burden of proof; (2) the State's opening statement and closing arguments were improper; and (3) the State elicited perjured testimony. Defendant

---

[153] D.I. 43 at 2:9-11; 3:1-3.
[154] *Id.* at 5:1-2.
[155] *Id.* at 7:12-18.
[156] See *Ramos v. Louisiana*, 590 U.S. 83 (2020).

has failed to articulate and support these claims with specific facts, and he cannot demonstrate prejudice. These claims are meritless.

### d. The reindictment violated Defendant's speedy trial rights.

Defendant alternatively claims the State's re-indictment in October 2021 was a violation of his speedy trial rights and did not provide counsel sufficient time to prepare a defense. This claim is meritless. As is noted *supra* in footnote 13, the amendments resulting in the superseding indictment were ministerial and did not result in a speedy trial violation. Trial counsel did not object to the superseding indictment and the record does not reflect that counsel was unprepared for trial or that the ministerial amendments to several charges and the inclusion of one count of Sexual Solicitation of a Child impeded trial counsel's ability to prepare a defense. Defendant's claim is speculative, meritless, and he has failed to demonstrate prejudice.

### e. The State's Use of an Easel.

Defendant argues "the State's use of an easel to chart off specific year, age [and] grade configurations impermissibly shifted the burden of proof onto the defendant."[157] This claim is meritless, as the prosecutor contemporaneously recorded on the easel the live testimony of A.G. during A.G.'s direct examination. Defendant does not allege the content of the writing on the easel was inaccurate or

---

[157] D.I. 83 at 25.

45

inconsistent with A.G.'s testimony. The use of an easel as a demonstrative aid is permissible pursuant to Delaware Rule of Evidence 611, and the content of the writing on the easel is not evidence. The witness's testimony was evidence. Defendant's claim is meritless.

### f. Prosecutor's improper statements.

Defendant argues the prosecutor "made improper statements which included areas deemed off limits by the Court in a pre-trial hearing." According to Defendant, those limitations included preclusion of references to the Defendant acting as a father figure to the victims in part due to the absence of the victims' birth fathers.[158] Defendant contends the "State knew, or should have known" that E.H.'s "father figure," Luis Cordova, was present for both E.H and A.G. when A.G. moved into Defendant's residence in 2009, and for A.G. when A.G. moved into Defendant's home. In fact, Defendant states Luis Cordova "signed off on the guardianship paperwork in 2017."[159]

Defendant's claims do not demonstrate the State knowingly offered false testimony or violated Defendant's constitutional rights. As has been discussed *supra*, several witnesses testified Defendant was a parental figure to the victims, and Defendant conceded same during his testimony. Defendant's claim is meritless.

---

[158] D.I. 83 at 24.
[159] *Id.* at 25.

## V. CONCLUSION

For the foregoing reasons, I recommend the claims raised in Defendant's *pro se* Motion for Postconviction Relief be **SUMMARILY DISMISSED** as procedurally barred and/or substantively meritless. I also recommend postconviction counsel's Motion to Withdraw be **GRANTED**.

**IT IS SO RECOMMENDED.**

/s/ Martin B. O'Connor
Commissioner Martin B. O'Connor